UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KELLY SCHROTH, BRIAN SCHROTH, both individually and As parents and next friends of the Minor children S.S. and T.S.,<br><br>Plaintiffs,<br>v.<br><br>MONKEY TRUNKS SACO, LLC, A Maine Limited Liability Company,<br><br>JANE DOE, an unknown individual,<br><br>CHALLENGE TOWERS, INC., a North Carolina Business Corporation.,<br><br>and<br><br>TREE-MENDOUS FOREST, INC., dba TREE-MENDOUS AERIAL ADVENTURES, an entity doing business out of New York State.<br><br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION<br>) CASE NO.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

NOW COMES Plaintiffs, by and through counsel, and complain against Defendants as follows:

**THE PARTIES, JURISDICTION & VENUE**

1. Plaintiff Kelly Schroth is a resident of San Anselmo, Marin County, State of California.

2. Plaintiff Brian Schroth is a resident of San Anselmo, Marin County, State of California.

3. Plaintiffs S.S. and T.S. are the minor children of Plaintiffs Kelly and Brian Schroth and reside with them.

4. Defendant Monkey Trunks Saco, LLC is, on information and belief, a Delaware limited liability company doing business in the State of Maine whose registered agent is C T Corporation System, with a principal place of business in York County, Maine, and which does business under assumed names, at least one of which is "Monkey Trunks."

1

5. Defendant "Jane Doe" is an unknown individual who, upon information and belief, was an employee or agent or Defendant Monkey Trunks Saco, LLC and who was accompanying the Plaintiff as a "guide" through the Zipline Tour at the time of these events. Plaintiff has not, as of yet, been able to identify "Jane Doe."

6. Defendant Challenge Towers, Inc. is, on information and belief, a North Carolina business corporation with a principal place of business in Todd, Watauga and/or Ashe Counties, State of North Carolina, whose registered agent is the president Ken Jacquot.

7. Defendant Tree-Mendous Forest Inc., dba Tree-Mendous Aerial Adventures, is, on information and belief, a New York business with a principal place of business in Canaan, State of New York, with registered agent David C. Luck.

8. This Court has jurisdiction pursuant to 28 U.S.C.A. § 1332 because the matter (damages) in controversy exceeds the sum of $75,000 and there is diversity of citizenship between the parties.

9. Venue is proper pursuant to 28 U.S.C.A. § 1391 because a substantial apart of the event complained of occurred within the District of Maine and because Defendant Monkey Trunks operates its adventure course in Maine, where the cause of action took place.

10. This Court has the authority to consider the remaining causes of action under its supplemental jurisdiction to determine issues of state law which arise out of the same occurrence pursuant to 28 U.S.C.A. section 1367.

11. There exists between the parties an actual controversy justiciable in nature.

## BACKGROUND FACTS

12. On July 7, 2016, Kelly Schroth ("Kelly") travelled with husband Brian Schroth ("Brian"), her daughter, S.S. (then aged 11), her son, T.S. (then aged 9) and some relatives to an attraction located at 98 Waterfall Drive, Saco, Maine, known as Monkey Trunks Saco Zipline Tour and Adventure Course ("Monkey Trunks" and the "Zipline Tour").

13. During her visit to Monkey Trunks on July 7, 2016, Kelly purchased a ticket and joined Brian and her children on the Zipline Tour.

14. Upon information and belief Tree-Mendous Forest Inc., dba Tree-Mendous Aerial Adventures ("Tree-Mendous") designed, built, maintained and/or inspected the Zipline Tour prior to July 7, 2016, at the request of, or in collaboration with Monkey Trunks.

15. Upon information and belief Challenge Towers, Inc. ("Challenge Towers") designed, built, maintained and/or performed inspections of the Zipline Tour prior to July 7, 2016, at the request of, or in collaboration with Monkey Trunks.

16. The Zipline Tour was an amusement attraction in which Monkey Trunks' guests paid a fee to ride on a course featuring ziplines and other aerial features.

17. The Zipline Tour was advertised and promoted as a wholesome fun and safe attraction at Monkey Trunks that featured the illusion of danger from negotiating challenging structures at considerable heights but was entirely safe because of use of safety devices.

18. Monkey Trunks advertises "safety first", assuring that "safety is the most important factor for our . . . adventurers".

19. Monkey Trunks further advertises that "All of our instructors complete rigorous training and are qualified to safely step in should you become stuck or need help at any point on the course. Our instructors are patient, experienced and can offer clear instruction every step of the way. They will be with you throughout the course to help you test yourself, and enjoy the experience."

20. Kelly and her family were required to attend Monkey Trunks' "Ground School" before using the Zipline Tour.

21. At "Ground School," Monkey Trunks' staff explained to Kelly (and others) how to use the course features securely. Kelly was not instructed how to slow a descent on the zipline if the brake failed, if that would even be possible. Nor was she instructed how to determine if a braking system in use on the Zipline Tour was properly set prior to descending the zipline.

22. Kelly, Brian, S.S. and T.S. attempted and completed most of the Zipline Tour before reaching a tree platform where they transitioned to the zipline which would take them down to ground level.

23. Brian, S.S. and T.S. all went down the zipline before Jane Doe, a course "guide," or employee of Monkey Trunks stationed on the tree platform, advised Kelly to begin the descent down the zipline, a metal cable connecting the tree platform to a terminal pole on ground level.

24. Kelly was wearing a harness which was attached to the zipline by a smart belay device.

25. At the direction of the "guide", Kelly stepped off the platform and she progressed down the zipline suspended underneath the zipline trolley, dangling in mid-air.

26. When Kelly began the descent from the tree platform, Kelly experienced significant gravitational force propelling her ever faster down the zipline.

27. As the zipline continued to increase in speed, Kelly realized that the attraction was out of control and that a crash was likely and imminent.

28. There was no braking device or process in place for the zipline that Kelly was travelling on.

29. As she approached the bottom of the zipline, she saw the termination pole—a large post like telephone pole, that was wrapped in light padding.

30. As the zipline brought Kelly rapidly toward the termination pole, Kelly experienced alarm, fright and fear.

31. Coming down a rapid descent, Kelly smashed at full speed into the barely padded termination pole.

32. Kelly impacted the pole with her left foot which shattered her ankle on absorbing most of the force of the unencumbered crash.

33. At the time of Kelly's descent down the zipline, and her impact with the pole, Brian was positioned within a few feet the landing zone, and was videotaping Kelly's descent as part of his documenting their family summer vacation to Maine.

34. Kelly and Brian's children, S.S. and T.S. were watching their mother's descent with Brian, within a few feet of the pole that she collided with.

35. Kelly, through no fault of her own, was injured by the zipline carrying her into the termination pole at a high rate of speed.

36. As a result of the collision with the termination pole, Kelly suffered injuries, damages, and losses well in excess of $75,000, as follows:

    a. Significant severe and traumatic physical injury, including, but not limited to, a trimalleolar ankle fracture, which to date has required three surgeries, and injury to other areas of her body which are permanent;
    b. Scarring and permanent disfigurement;
    c. Permanent disability and impairment;
    d. Past and future medical bills which must be repaid;
    e. Past, present, and future economic damages in the form of medical expenses, lost income and lost opportunity, and out-of-pocket expenses;
    f. Pain and suffering; and
    g. Inconvenience, aggravation, and loss of enjoyment of life.

37. As a result of Kelly's injuries, damages and losses Brian has suffered:

    a. a loss of companionship, comfort, and services by his wife of eighteen years; and
    b. Serious emotional distress.

38. As a result of Kelly's injuries, damages and losses S.S. has suffered serious emotional distress.

39. As a result of Kelly's injuries, damages and losses T.S. has suffered serious emotional distress.

## LIABILITY FACTS

40. Upon information and belief, the zipline which Kelly was descending when she was injured had a braking device installed upon it sold under the device name zipSTOP, and which is manufactured by an entity known as Headrush Technologies.

41. Upon information and belief, the design of the zipSTOP braking device, which is in the category known as passive braking, is such that the brake is designed to engage automatically and then to automatically reset after each rider descends the zipline and is stopped by the braking device.

42. Upon information and belief, the design is such that when the braking device is reset, it is a significant distance from the termination pole, some 20-30 feet, which is where the descending zipline rider's zipline trolley engages with the brake which then engages and descends with the rider, while braking the rider, to the termination pole, before then resetting to its position 20-30 feet from the termination pole.

43. Upon information and belief, the zipline upon which Kelly was injured was the only zipline at Monkey Trunks which utilized a zipSTOP brake.

44. The Zipline and Adventure Course industry are subject to standards which are designed to ensure safety in the design, build, inspection and operation of zipline courses. These include, but are not limited to, the American Society for Testing and Materials ("ASTM") and the Association for Challenge Course Technology ("ACCT").

45. Upon information and belief, both the ASTM and the ACCT require a backup, or emergency arrest device ("EAD") to be utilized on a zipline such as the one which Kelly was injured upon so that there are always two braking devices, with one serving as a fail-safe backup in case of malfunction of the primary brake.

46. Upon information and belief, the manufacturer of the zipSTOP also recommended that an EAD be utilized on any zipline equipped with a zipSTOP passive brake in order to render the zipline fail-safe.

47. At the time that Kelly descended the zipline the zipSTOP brake had not reset following the previous rider's descent.

48. The fact that the zipSTOP brake had not reset would have been readily apparent to any employee, agent or operator of Monkey Trunks as it would not have reset in its proper place, some 20-30 feet away from the termination pole.

5

49. The zipline was not equipped with any EAD.

50. As a result, at the time of Kelly's crash, the zipline did not have any properly functioning brake; therefore, it was not in compliance with industry safety standards and not in compliance with the manufacturers specifications for use.

51. Upon information and belief, Defendant Monkey Trunks maintains the zipline and employed, supervised and trained Jane Doe, the "guide" who permitted Kelly to descend the zipline without a brake engaged.

52. Upon information and belief, Jane Doe, the employee or "guide" who was with Kelly was acting in the course and scope of their employment with Monkey Trunks.

53. Monkey Trunks is vicariously liable for the actions of Jane Doe as set forth in this Complaint.

54. Defendant Monkey Trunks owned, managed, directed, operated and promoted the Zipline Tour.

55. Defendants Monkey Trunks and Jane Doe were familiar with the equipment that was used to convey Kelly down the zipline.

56. Defendants Monkey Trunks and Jane Doe knew or should have known that the zipline did not have any braking mechanism engaged to prevent Kelly from colliding with the termination pole.

57. Defendant Monkey Trunks knew or should have known that the zipline and/or its braking mechanism had not been adequately or sufficiently maintained for use to prevent full-speed collisions.

58. Defendant Monkey Trunks knew that if the zipSTOP device failed, the zipline was otherwise not equipped with a braking system.

59. Upon information and belief, Challenge Towers, designed, built, inspected, maintained and/or oversaw the installation of the Monkey Trunks Zipline Tour's features and systems prior to July 6, 2016.

60. Upon information and belief, Challenge Towers was familiar with the zipline's design, components and braking systems before Kelly descended it on July 6, 2016.

61. Defendant Challenge Towers knew or should have known that the zipline was inherently unsafe as designed, built, inspected and operated because it did not have a backup braking device and was not in compliance with industry safety standards such that if the zipSTOP device failed, the zipline was otherwise not equipped with a braking system.

62. Upon information and belief, Tree-Mendous, designed, built, inspected, maintained and/or oversaw the Monkey Trunks Zipline Tour's features and systems prior to July 6, 2016.

63. Upon information and belief, Tree-Mendous was familiar with the zipline's design, components and braking systems before Kelly descended it on July 6, 2016.

64. Defendant Tree-mendous knew or should have known that the zipline was inherently unsafe as designed, built, inspected and operated because it did not have a backup braking device and was not in compliance with industry safety standards such that if the zipSTOP device failed, the zipline was otherwise not equipped with a braking system.

## COUNT I
**(Negligence/Gross Negligence – Plaintiff Kelly Schroth v. Monkey Trunks and Jane Doe)**

65. Plaintiffs repeat and reallege each of the foregoing paragraphs as if set out fully herein.

66. Monkey Trunks owed a duty to Kelly on July 6, 2016 to design, build, maintain and operate the Zipline Tour in a safe and reasonable fashion.

67. Jane Doe owed a duty to Kelly on July 6, 2016 to operate the Zipline Tour in a safe and reasonable fashion.

68. Monkey Trunks and Jane Doe breached their duty owed to Kelly on July 6, 2016 as set forth in paragraphs 40 through 58, above.

69. The conduct of Monkey Trunks and Jane Doe was willful and wanton and constituted a total disregard for the safety of Kelly.

70. As a direct and proximate result of the gross negligence of defendants Monkey Trunks and Jane Doe, Plaintiff Kelly Schroth suffered injuries, damages and losses as set forth in paragraph 36, above.

WHEREFORE, the Plaintiffs seek compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, punitive and exemplary damages and interest.

## COUNT II
**(Negligence/Gross Negligence – Kelly Schroth v. Challenge Towers)**

71. Plaintiffs repeat and reallege each of the foregoing paragraphs as if set out fully herein.

72. Upon information and belief Challenge Towers, designed, built, inspected, maintained and/or oversaw the installation of the Monkey Trunks Zipline Tour's features and systems prior to July 6, 2016.

73. As such, Challenge Towers owed a duty to users of the Zipline Tour, such as Kelly, to assure that the Zipline Tour was safe, was built and operating within the industry safety guidelines, and in such a way that the zipline was not dangerous, defective and wholly ill-suited to the safety of its users

74. Challenge Towers breached their duty as set forth in paragraphs 40-61, above.

75. The conduct of Challenge Towers was willful and wanton and constituted a total disregard for the safety of Kelly.

76. As a direct and proximate result of the gross negligence of defendant Challenge Towers, Plaintiff Kelly Schroth suffered injuries, damages and losses as set forth in paragraph 36, above.

WHEREFORE, the Plaintiffs seek compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, punitive and exemplary damages and interest.

## COUNT III
**(Negligence/Gross Negligence – Kelly Schroth v. Tree-Mendous Aerial Adventures)**

77. Plaintiffs repeat and reallege each of the foregoing paragraphs as if set out fully herein.

78. Upon information and belief, Tree-Mendous designed, built, inspected, maintained and/or oversaw the installation of the Monkey Trunks Zipline Tour's features and systems prior to July 6, 2016.

79. As such, Tree-Mendous owed a duty to users of the Zipline Tour, such as Kelly, to assure that the Zipline Tour was safe, was built and operating within the industry safety guidelines, and in such a way that the zipline was not dangerous, defective and wholly ill-suited to the safety of its users

80. Tree-Mendous breached their duty as set forth in paragraphs 40-58 and 62-64, above.

81. The conduct of Tree-Mendous was willful and wanton and constituted a total disregard for the safety of Kelly.

82. As a direct and proximate result of the gross negligence of defendant Tree-Mendous, Plaintiff Kelly Schroth suffered injuries, damages and losses as set forth in paragraph 36, above.

WHEREFORE, the Plaintiffs seek compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, punitive and exemplary damages and interest.

## COUNT IV
### (Vicarious Liability/Negligence – Plaintiff Kelly Schroth v. Monkey Trunks)

83. Plaintiffs reassert and reallege all of the allegations set forth in the preceding paragraphs and incorporates them herein by reference.

84. Upon information and belief, at all times pertinent to these claims, Defendant Jane Doe was acting within the course and scope of her employment with Monkey Trunks.

85. As such, Defendant Monkey Trunks is vicariously liable for the negligent acts of its employees as set forth above.

86. As a direct and proximate result of the negligent act of Monkey Trunks employees, Plaintiff Kelly Schroth suffered injuries, damages and losses as set forth in paragraph 36, above.

WHEREFORE, the Plaintiffs seek compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, punitive and exemplary damages and interest.

## COUNT V
### (Loss of Consortium, 14 M.R.S.A. § 302 – Plaintiff Brian Schroth v. All Defendants)

87. Plaintiffs reassert and reallege all of the allegations set forth in the preceding paragraphs and incorporate them herein by reference.

88. On or about July 7, 2016, Defendants owed a duty of care to Plaintiff Kelly Schroth to render the Monkey Trunks premises reasonably safe and in compliance with basic industry safety standards for those users of the Zipline Tour such as to not cause injury as set forth above.

89. As a direct and proximate result of Defendants' breaches, Plaintiff Kelly Schroth suffered severe injuries, damages and losses set for paragraph 36, above.

90. Kelly and Brian Schroth have been married at all times relevant to this complaint, since 2001.

91. Kelly Schroth's injuries, damages, and losses caused loss of consortium to Plaintiff Brian Schroth including, but not limited to, loss of companionship, loss of comfort, and loss of services, and as set forth in paragraph 37, above.

WHEREFORE, the Plaintiffs seeks compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, exemplary damages and interest.

## COUNT VI
### (Negligent Infliction of Emotional Distress – Plaintiffs Brian Schroth, S.S. and T.S. v. All Defendants)

92. Plaintiffs reassert and reallege all of the allegations set forth in the preceding paragraphs and incorporate them herein by reference.

93. As set forth above Defendants were grossly negligent and/or negligent in causing injury to Kelly.

94. Brian, S.S. and T.S. were all very near to, and observing Kelly when she suffered the traumatic injury caused by the negligence of Defendants.

95. It was entirely foreseeable to Defendants that Kelly's accident would occur and that other persons participating in the Zipline Tour would witness such an event as bystanders.

96. Plaintiffs Brian Schroth, S.S. and T.S. all sustained serious emotional distress as a direct and proximate result of the defendant's actions.

WHEREFORE, the Plaintiffs seek compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, exemplary damages and interest.

## COUNT VII
### (Premises Liability – Kelly Schroth v. Defendant Monkey Trunks)

97. Plaintiffs re-alleges and reasserts all allegations set forth in the preceding paragraphs and incorporates them herein by reference.

98. Defendant Monkey Trunks owed a duty to Plaintiffs and others to make and keep the premises reasonably safe.

99. Defendant Monkey Trunks violated its duty to Plaintiffs and others to keep the premises safe from the reckless and/or intentional and/or tortious actions of its employees, agents as set forth in paragraphs 40 through 57, above.

100. As a direct and proximate result of Monkey Trunks' failure to keep the premises safe, Plaintiff Kelly Schroth suffered injuries, damages and losses as set forth in paragraph 36, above.

WHEREFORE, the Plaintiffs seek compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, punitive and exemplary damages and interest.

## COUNT VIII
### (*Res Ipsa Loquitor* – Kelly Schroth v. All Defendants)

101. Plaintiffs repeat and reallege each of the foregoing paragraphs as if set out fully herein.

102. Upon information and belief, it is not known at this time why the zipSTOP brake was not reset prior to Kelly's descent.

103. At all times relevant to these claims the Zipline Tour was under the defendants' control or management.

104. In the ordinary course of events, the accident would not have occurred in the absence of negligence.

105. Other responsible causes, including any conduct of Kelly or any other third person is eliminated by the factual scenario set forth herein.

106. As a direct and proximate result of this event Plaintiff Kelly Schroth suffered injuries, damages and losses as set forth in paragraphs 36, above.

WHEREFORE, the Plaintiffs seek compensatory damages, and such other and further relief as this Court deems just and equitable, including attorney's fees, costs, punitive and exemplary damages and interest.

## COUNT IX
### (Unfair Trade Practices Act Violation, Kelly Schroth v. Monkey Trunks)

107. Plaintiffs hereby incorporate by reference each of the preceding paragraphs as though fully set forth herein.

108. Defendant Monkey Trunks has violated 5 M.R.S. § 207 by misrepresenting to Plaintiff that the Zipline Tour at Monkey Trunks Saco was safe and that it was Monkey Trunks' priority to assure the safety of its guests.

109. Relying on Monkey Trunks' marketing campaign regarding its safety measures, Plaintiff Kelly Schorth purchased a ticket for the Zipline Tour thereby entrusted herself to the employees and/or agents of Monkey Trunks Saco.

110. Defendant Monkey Trunks did not comply with the relevant safety protocols of any of the relevant agencies covering use of ziplines: ASNI, AMD, Defendant Monkey Trunks' violations of 5 M.R.S. § 207 have caused financial loss to Plaintiff.

111. At least 30 days prior to filing this action, Plaintiff gave Defendant Monkey Trunks, through their representative, a written demand for relief.

112. Defendant Monkey Trunks did not respond to Plaintiff's demand for relief.

WHEREFORE, Plaintiffs demand judgment as follows:

A. Actual damages in the exact amount of Kelly Schroth's medical bills, lost past and future income, and out-of-pocket expenses;
B. Costs and disbursements incurred by Plaintiffs in connection with this action;
C. Plaintiffs' attorney's fees and costs of suit; and
D. Such other and further relief as the Court deems just and proper.

## JURY TRIAL REQUEST

Plaintiff requests a jury trial in this matter on all counts so triable.

Dated this 28th day of March, 2019, at Portland, Maine.

        Respectfully submitted,

        */s/ David A. Weyrens*
        */s/ Daniel D. Feldman*
        _____
        David A. Weyrens, Bar No. 4035
        Daniel D. Feldman, Bar No. 5638
        Attorneys for Plaintiffs
        HALLETT WHIPPLE WEYRENS
        6 CITY CENTER, SUITE 208
        P.O. BOX 7508
        PORTLAND, ME 04112
        PH: 207.775.4255
        *dweyrens@hww.law*
        *dfeldman@hww.law*